IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


JEFFREY J. MOORE and
SANDRA J. MOORE,

            Plaintiffs,

v.                                          Civil Action No. 1:12CV123
                                                                (STAMP)
EQUITRANS, L.P.,
a Pennsylvania limited
partnership,

            Defendant.


**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND AMENDED MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
SCHEDULING STATUS AND SCHEDULING CONFERENCE**

I.  Procedural History

     The plaintiffs, Jeffrey J. Moore and Sandra J. Moore ("the

Moores"), initially brought this action in the Circuit Court of

Marion County, West Virginia, against the defendant, Equitrans,

L.P. ("Equitrans").  The defendant subsequently removed this action

to this Court based on diversity jurisdiction.  In their complaint,

the plaintiffs allege that predecessors of the defendant and the

plaintiffs entered into a valid right-of-way agreement to place a

16-inch pipeline (what the parties call the "H-557 pipeline") on

the plaintiffs' property.  However, the plaintiffs claim that the

defendant breached that contract by constructing approximately 700

feet of pipeline off of the designated route in the right-of-way

contract.  By way of relief, the plaintiffs are claiming damages

for breach of contract and trespass, and also seek an ejectment order for the removal of the pipeline from their property.

After removal, the defendant sought leave of this Court to file a counterclaim against the plaintiffs for protective easement. This Court granted that motion. In its counterclaim, the defendant contends that it did not mistakenly place the pipeline off of the designated route. However, the defendant filed the counterclaim in order to assert that if it did place the pipeline off of the designated route, it has fulfilled the requirements of adverse possession and thus is entitled to a prescriptive easement.

Thereafter, the parties filed a joint motion to extend deadlines. This was granted based on the parties' indication that a key witness, Revelee Henry Allen ("Allen"), who is a former employee of the defendant, needed to change his testimony from his previous deposition. Once another deposition of Allen was completed, the parties each filed motions for summary judgment. The defendant filed both a motion for summary judgment and an amended motion for summary judgment stating that the amended motion was filed out of an abundance of caution as the defendant had incorrectly labeled the first motion for summary judgment.

This Court then held a motion hearing at which the parties orally argued their individual motions for summary judgment. This Court then entered an order vacating the scheduling order, as pretrial proceedings were set to occur in the near future.

Further, in that same order, this Court directed the parties to submit further briefing solely on (1) the issues relating to the jurisdiction of this Court under the Federal Energy Regulatory Commission ("FERC") to consider any possible condemnation claim and (2) the process that the parties believe this Court should pursue in considering the arguments made in the parties' motions for summary judgment, particularly as to how other claims would be affected by any condemnation proceeding involving FERC. Supplemental briefing was then submitted by the parties.

## II. <u>Facts</u>

### A. <u>Defendant's Motion for Summary Judgment</u>

The defendant makes several arguments in its motion for summary judgment, they are as follows:

> 1. *The H-557 pipeline was laid and replaced properly according to the 1960 right-of-way agreement.* The defendant argues that, despite the plaintiffs' argument that the pipeline had to be laid "exactly" along the route in the right-of-way agreement, the actual agreement uses the phrase "approximately along the route laid and marked for same." Thus, the pipeline only need to be approximately along the route. Further, the defendant argues that the right-of-way allowed it to make changes in the location because of road construction or relocations, ground slips or other causes beyond the control of the defendant.

> 2. *The plaintiffs' claims are time barred* because the applicable statute of limitations for their claims would have given them a maximum of ten years to file and they filed over 15 years later. The replacement pipeline was laid in 1995-96 and the plaintiffs did not file until 2012.

> 3. *If the Court finds that the pipeline was placed incorrectly, the defendant is still entitled to a*

*prescriptive easement based on adverse possession because*: (1) Mr. Moore testified he knew where the pipeline was on his property; (2) the defendant's use of the land was continuous and uninterrupted for at least ten years prior to this action; (3) there is an identifiable starting and ending point, thus the line and width of measurement of the pipeline can be accurately determined; and (4) use of the land will be the same as it was during the time of prescription.

4.  *The plaintiffs have not suffered any damages*.  The defendant asserts that Mr. Moore has stated (1) that he is only seeking damages if the pipeline is removed and relocated and (2) that he is not making a claim for diminution of value of his property.  Thus, the defendant asserts that the plaintiffs cannot maintain their claims for trespass and breach of contract because they are only seeking damages if the ejectment order is granted.

5.  *Ejectment is not a proper remedy on the merits*.  The defendant contends that the plaintiffs are bringing this action as retaliation against EQT, a party not involved in this action, for drilling on their property.  The defendant asserts that the plaintiffs' assertion that they want the defendant to move a fifty year old pipeline and dig new holes to place it right beside the current location is not a reasonable remedy.

6.  *Ejectment is not a proper remedy because the defendant has the right to condemn the property at issue pursuant to the Natural Gas Act*.  The defendant asserts that it is only asserting this as an alternative to its other arguments because it would require leave from this Court to file a counterclaim for condemnation but that it would be able to meet all the requirements if it were granted such leave.

In their response, the plaintiffs first argue that the defendant has created a material issue of fact because of its alternative factual arguments, i.e. that it placed the pipeline where it was supposed to be located and that it placed the pipeline approximately where it was supposed to be located.  The plaintiffs then make the following arguments:

1.  *The movement of the pipeline was not "approximately" along the right-of-way route*.  The evidence of the survey shows that the defendant did not merely move the pipeline two to five feet but rather moved the pipeline 20 to 30 to even 65 feet off of the agreed right-of-way.  Further, the plaintiffs contend that the evidence also shows that the defendant kept the pipeline operational while replacing it, and thus they could not have put the replacement pipeline back in the same trench that was still in use.  Accordingly, the plaintiffs argue, because the defendant unilaterally moved the pipeline, it breached the right-of-way and that constitutes a continuing trespass.

2.  *There was no road construction, ground slips or other causes beyond the control of the defendant* that would have allowed the defendant to change the location of the pipeline under the right-of-way agreement.

3.  *The plaintiffs filed within the statute of limitations because of the "discovery rule."*  The plaintiffs argue that they did not know or should not have reasonably known of the misplacement of the pipeline until 2012 when Mr. Moore's attention was directed to the pipeline because of the misplacement of drilling pads by EQT.  The plaintiffs assert that (1) Mr. Moore asked employees of the defendant whether the pipeline complied with the right-of-way and they told him it did, he was only tipped off to its location after they marked the pipeline with flags and (2) the defendant's own employees did not know the pipeline's location.  Finally, the plaintiffs contend that because the pipeline was buried the plaintiffs had no reason to know its exact location but only knew generally where it had been placed in 1995-96.

4.  *The misplacement of the pipeline constitutes a continuing trespass* either because (1) the defendant placed the pipeline off of the agreed route, or (2) because the defendant continues to flow its gas through the misplaced pipeline.

5.  *The defendant cannot meet the open and hostile elements for adverse possession* because the pipeline was buried when it was relocated.  Also, the defendant's employees testified that they believed that the pipeline was in the correct place until they reviewed the construction file.  Thus without that file the plaintiffs

would also not have known that fact. Further, the
defendant was not hostile because it had a valid
right-of-way agreement with the plaintiffs.

6. *Ejectment is a proper remedy* because under West
Virginia law ejectment is proper when trespass occurs no
matter how inconsiderable the damage is to the real
property.

7. *The defendant cannot make a valid condemnation
argument* because it has committed a trespass on the
plaintiffs' property and thus its request is done with
unclean hands and cannot be allowed.

In its reply, the defendant first reiterates its arguments as
to the difference between "exact" and "approximate" in the
right-of-way agreement. Further, the defendant reiterates its
arguments as to why ejectment is an improper remedy in this case.
The defendant then goes on to argue that it was within the
right-of-way agreement clause because it was relocating the pipe
for "other causes beyond the control" of the defendant because the
pipeline was deteriorating. Further, it contends that it did not
merely replace the pipeline solely for business reasons but also
because it is subject to the regulation of the FERC and had to
continue to provide the transmission of natural gas used by public
utilities.

As to the statute of limitations, the defendant reiterates its
argument that based on Mr. Moore's testimony, he knew about the
pipeline replacement in 1997 at the latest. Further, the defendant
argues that its employees told Mr. Moore that the pipeline was in
the correct location according to the right-of-way agreement

because it was and still is. As to the plaintiffs' continuing trespass argument, the defendant contends first that it did not trespass because the pipeline was correctly placed. However, the defendant also argues that the plaintiffs misconstrue the law on continuing trespass because the trespass that began the running of the statute of limitations was the actual placement of the pipeline which was a discrete and complete act and no repeated wrong or repeated injury occurred.

The defendant then argues that it has shown the hostile and open elements of adverse possession. First, as to the hostile element, the defendant argues that the plaintiffs' contentions fail because if the defendant had permission to relocate/replace the pipeline through the right-of-way, then there is no reason for this litigation. Thus, the plaintiffs cannot argue it both ways in order to defeat differing claims by the defendant. As to the openness element, the defendant reiterates its previous arguments as to why Mr. Moore had knowledge of the pipeline's placement.

The defendant argues that because the taking through condemnation would only be a partial taking, the plaintiffs are only entitled to diminution of value of the property. The defendant contends again that the plaintiffs have admitted that there has been no diminution. Further, the defendant asserts that ejectment is improper because the FERC has primary jurisdiction over claims for trespass and ejectment of a FERC certified

pipeline, thus, the defendant cannot remove or relocate the pipeline without permission from the FERC.  Therefore, if the Court is inclined to grant ejectment, this Court must refer the plaintiffs' complaint to the FERC.

B.  <u>Plaintiffs' Motion for Summary Judgment</u>

The plaintiffs first argue in their motion for summary judgment that because the defendant chose the route for the pipeline, acquired a right-of-way for that route, and then referenced that route in the right-of-way agreement as "laid out and marked for same," it could not relocate the right-of-way, or portions of it, thereafter without the plaintiffs' consent.  The plaintiffs contend that the evidence shows conclusively that is what happened and thus, they are entitled to summary judgment. Second, the plaintiffs argue that the defendant trespassed by not gaining consent to place the pipeline outside of the right-of-way, which is confirmed by the testimony of Allen, the former employee of the defendant.  Finally, the plaintiffs argue that they are entitled to ejectment because the defendant relocated the pipeline in order to keep the pipeline in use while the defendant made repairs and thus trespassed.

In its response, the defendant makes the same arguments as it made in its motion for summary judgment and reply to the plaintiffs' response to the defendant's motion for summary judgment.

In their reply, the plaintiffs reiterate their arguments from their summary judgment and from their response to the defendant's motion for summary judgment. The plaintiffs add that the defendant cannot obtain condemnation because the defendant's predecessor obtained the right-of-way and this right-of-way prevents the defendant from asserting any condemnation power under 15 U.S.C. § 717f(h). The plaintiffs also make a new contention that the defendant waived its right to pursue relief from the FERC because it never raised the jurisdictional issue in its notice of removal and never raised the doctrine of primary administrative jurisdiction as an affirmative defense in its answer. Further, the plaintiffs contend that if the defendant is not found to have waived the issue, it does not qualify under 15 U.S.C. § 717r because the defendant initiated the relocation, not the plaintiffs, and because the plaintiffs' injuries arise from the defendant's decision to relocate the pipeline not the Commissioner's order to do so. Finally, the plaintiffs assert that the doctrine of primary administrative jurisdiction merely allows this Court to decline jurisdiction, it does not divest this Court of jurisdiction.

C.    Supplemental Briefing

The defendant argues in its supplemental briefing that this Court lacks jurisdiction to order an ejectment or abandonment of the pipeline in question because the FERC has primary jurisdiction. The defendant argues that the FERC has jurisdiction over the

dedication and abandonment of interstate natural gas pipelines and
thus courts do not have authority over plaintiffs' claims in such
actions for ejectment, trespass, and removal. The defendant cites
two cases for this assertion, Begay v. Public Service Company of
New Mexico, 710 F.Supp. 2d 1161, 1196 (2010) and Tampa Interstate
75 Ltd. P'ship v. Fla. Gas Transmission, 294 F.Supp. 2d 1277, 1279
(2003). Thus, the defendant asserts that because the plaintiffs in
this action are only seeking removal or relocation of the pipeline,
plus any damages of relocation or removal, this Court does not have
jurisdiction over those claims.

Next, the defendant addresses three procedural options for
this Court:

> (1) refrain from exercising jurisdiction, dismiss
> plaintiffs' complaint or administratively close the case
> subject to being reopened following a determination by
> the FERC;
> (2) determine whether a breach of the right-of-way
> agreement or trespass has occurred and then, if so,
> transfer to the FERC; or
> (3) if the case goes to a jury trial and the plaintiffs
> win on their claims, either allow amendment of the
> pleadings by either party to proceed to condemnation/
> inverse condemnation action pursuant to the Natural Gas
> Act, remand to the state court for condemnation
> proceedings as the property value is less than $3,000.00,
> dismiss the case as to the condemnation action for the
> parties to re-file as they deem necessary, or refer the
> matter to the FERC to determine whether ejectment is
> appropriate.

The plaintiffs argue, in response, that the FERC lacks
jurisdiction because plaintiffs' ejectment action, if successful,
does not require the defendant to abandon the pipeline but only

10

relocate it to the area described in the metes and bounds description of the right-of-way. Further, the plaintiffs contend that relocation is not equivalent to abandonment and thus, because the Natural Gas Act uses the term "abandon" rather than "relocate," under a plain meaning analysis of the statutory terms, the plaintiffs' requested relief may be ordered by this Court.

Further, the plaintiffs assert that even assuming the FERC has jurisdiction, the FERC shares its jurisdiction with this Court pursuant to the doctrine of primary jurisdiction. As such, this Court may retain this action or stay this action while the FERC decides the issues under its jurisdiction. The plaintiffs argue that this Court should not stay the action and instead should retain jurisdiction because the defendant waived its right to pursue relief from the FERC and because the plaintiffs' ejectment action does not involve questions that would require agency expertise. In further support, the plaintiffs reiterate their argument that the defendant has waived the FERC defense. The plaintiffs assert that this is shown by the defendant: (1) removing the action to this Court without attempting to have the state court remand to the FERC; (2) not raising the affirmative defense of FERC jurisdiction once the action was removed; and (3) filing a counterclaim and moving for summary judgment in this Court, after removal and the filing of an answer.

The plaintiffs also argue that <u>Begay</u> and <u>Tampa Interstate</u> are distinguishable. First, the plaintiffs argue that unlike this action, the plaintiffs in <u>Begay</u> acknowledged that the trespassing pipeline was located pursuant to a right-of-way that was consented to by the plaintiffs. Additionally, the plaintiffs assert, that unlike this case, the defendant in <u>Tampa Interstate</u> raised the FERC's jurisdiction as an affirmative defense. Finally, the plaintiffs contend that the Court may retain jurisdiction because the issues in this action are not those that require the expertise of the FERC. Rather, the plaintiffs assert that the issues of trespass and ejectment are issues that this Court is familiar with and thus, this Court may retain jurisdiction.

The defendant argues in its reply that the plaintiffs' distinction between "relocation" and "ejectment" is not valid under the Natural Gas Act because either relief would necessarily discontinue use of a portion of the H-557 pipeline. Further, the defendant contends that it has not waived the FERC's jurisdiction because the FERC's regulatory authority is bound by statute and thus, the defendant cannot waive the FERC's jurisdiction. Additionally, the defendant asserts that it did not waive the jurisdictional argument because when this action was removed, it still believed that the plaintiffs were seeking monetary damages. Thus, the defendant contends, when it became clear that the

plaintiffs were only seeking removal or relocation of the pipeline, the defendant raised the issue of jurisdiction.

The motions for summary judgment are now fully briefed. For the reasons set forth below, this Court finds that the defendant's first motion for summary judgment is denied as moot, the defendant's amended motion for summary judgment is denied, and the plaintiffs' motion for summary judgment is denied.

### III. Applicable Law

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party." Id. at 250;
see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th
Cir. 1979) (Summary judgment "should be granted only in those cases
where it is perfectly clear that no issue of fact is involved and
inquiry into the facts is not desirable to clarify the application
of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d
390, 394 (4th Cir. 1950))).

Further, summary judgment is generally appropriate only after
adequate time for discovery. Evans v. Technologies Applications &
Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996). "[S]ummary judgment
must be refused where the nonmoving party has not had the
opportunity to discover information that is essential to his
opposition." Anderson, 477 U.S. at 250 n.5. However, "great
weight [is placed] on the [Federal Rule of Civil Procedure] Rule
[56(d)] affidavit, believing that a party may not simply assert in
its brief that discovery was necessary and thereby overturn summary
judgment when it failed to comply with the requirements of Rule
[56(d)] to set out reasons for the need for discovery in an
affidavit." Evans, 80 F.3d at 961. In reviewing the supported
underlying facts, all inferences must be viewed in the light most
favorable to the party opposing the motion. See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

Several arguments have been set forth by the parties in their motions for summary judgment.  This Court will review each argument in turn.

### A.  Language of the Right-of-Way Agreement

The parties disagree as to whether the H-557 pipeline was replaced according to the terms of the right-of-way agreement.  The defendant asserts that the pipeline was placed "approximately" along the route described in the right-of-way agreement and thus, the defendant has not committed a trespass or a breach of contract. The plaintiffs, however, contend that the placement was not "approximate" and was actually 20 to 65 feet away from the right-of-way agreement's contemplated route.

Further, the parties disagree as to the term of the right-of-way agreement which states that: "[Equitrans] shall have the right to make such changes in the location of said right of way as from time to time may be necessary or advisable owing to road constructions or relocations, ground slips or other causes beyond the control of the Grantee . . . ."  ECF No. 32 Ex. A.  The plaintiffs assert that the defendant could not change the location because there were no road constructions or relocations, or ground slips.  The defendant, on the other hand, contends that the issue that caused the replacement was beyond its control and thus the relocation was allowed pursuant to the right-of-way agreement.

1. "<u>Approximately</u>"

This case was removed to this Court pursuant to diversity jurisdiction. Accordingly, West Virginia law must be applied to determine how this Court should interpret the contract and whether or not it may grant a motion for summary judgment based on what "approximately" means in the context of this action. <u>Harbor Court Assocs. v. Leo A. Daly Co.</u>, 179 F.3d 147, 153 (4th Cir. 1999) ("In this appeal, we are sitting in diversity; therefore, our task "is to 'rule upon state law as it exists and not to surmise or suggest its expansion.'") (quoting <u>Burris Chemical, Inc. v. USX Corp.</u>, 10 F.3d 243, 247 (4th Cir. 1993)). Under West Virginia law, the trial court determines whether "the terms of an integrated agreement are unambiguous and, if so, [ ] construe[s] the contract according to its plain meaning. In this sense, questions about the meaning of contractual provisions are questions of law." <u>Fraternal Order of Police, Lodge No. 69 v. City of Fairmont</u>, 468 S.E.2d 712, 715 (W. Va. 1996). The West Virginia Supreme Court, however, couched that finding as follows:

> However, when a trial court's answers rest not on plain meaning but on differential findings by a trier of fact, derived from extrinsic evidence as to the parties' intent with regard to an uncertain contractual provision, [those questions are left for the jury]. The same standard pertains whenever a trial court decides factual matters that are essential to ascertaining the parties' rights in a particular situation (though not dependent on the meaning of the contractual terms per se ). In these types of cases, the issues are ordinarily fact-dominated rather than law-dominated . . . .

Id. (citation omitted).

If the trial court finds that the contract is ambiguous, "the ultimate resolution of it typically will turn on the parties' intent.  Exploring the intent of the contracting parties often, but not always, involves marshaling facts extrinsic to the language of the contract document.  When this need arises, these facts together with reasonable inferences extractable therefrom are superimposed on the ambiguous words to reveal the parties' discerned intent." Id. at 716, fn. 7.  "Contract language usually is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations . . . 'A contract is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction.'" Id. at 716 (citation omitted).  "'The mere fact that parties do not agree to the construction of a contract does not render it ambiguous.  The question as to whether a contract is ambiguous is a question of law to be determined by the court.'" Id. at 717-18 (citing Syl. pt. 1, Berkeley Co. Pub. Ser. Dist. v. Vitro Corp., 162 S.E.2d 189 (W. Va. 1968)).

This Court finds that the contract term "approximately" is ambiguous in the context of this case.  However, this finding is not based on the contract term per se.  This Court makes that

finding because of the factual disagreement of the parties as to what would fulfill the obligation of the defendant to place the pipeline "approximately" along the route of the right-of-way agreement. Pursuant to <u>Fraternal Order of Police, Lodge No. 69</u>, as stated above, this Court must find that a term is ambiguous if "factual matters . . . are essential to ascertaining the parties' rights in a particular situation (though not dependent on the meaning of the contractual terms per se)." 468 S.E.2d at 715. Thus, as here, where the parties disagree as to how far the replaced pipeline is from the original designation of the right-of-way agreement, there could be differential findings by a trier of fact as to what constitutes "approximately." As such, this Court may not grant summary judgment for either party.

2. <u>Beyond Grantee Control</u>

Based on the same West Virginia precedent as above, this Court also finds that the applicability of the facts to this case will play an important part in the interpretation of the language in the right-of-way agreement which allows relocation if "beyond the control of the Grantee." Such a determination would be one for the fact-finder as it requires a weighing of the factual matters underlying this issue.

B. <u>Statute of Limitations</u>

The applicable statute of limitation provision for tortious damage to property is West Virginia Code § 55-2-12(a). Syl. pt. 1,

<u>Family Savings and Loan, Inc. v. Ciccarello</u>, 207 S.E.2d 157 (W. Va. 1974); <u>State ex rel. Ashworth v. Road Comm'n</u>, 128 S.E.2d 471 (W. Va. 1962); <u>Powderidge Unit Owners Ass'n v. Highland</u>, 474 S.E.2d 872, 884 (W. Va. 1996). The statute prescribes a two-year period within which to institute an action after accrual of the right to bring it. W. Va. Code § 55-2-12(a).

    1.  <u>Discovery Rule</u>

    The parties argue as to whether or not Mr. Moore knew the location of the pipeline, and that it was incorrectly placed, in 1997 or in 2012. The plaintiffs argue that he could not have known the location of the pipeline because (1) it is underground and thus he would not have known exactly where the pipeline was placed in 1997; (2) he had no reason to question the placement because the defendant's employees told him it was placed correctly; and (3) he finally had reason to question the placement in 2012 after issues arose with the placement of drilling wells on his property by EQT (a non-party). The defendant argues that Mr. Moore knew, at the latest, in 1997 where the new pipeline was placed in proximity to the older pipeline. The defendant asserts that Mr. Moore came up to inspect the construction that was taking place and confirmed the placement of the pipeline from 1995-1997.

    The United States Court of Appeals for the Fourth Circuit has held, in applying West Virginia law, that who should resolve a statute of limitations defense depends on the facts of the case.

Where " reasonable persons could draw different conclusions from [the] facts . . . there is a material question of fact with regard to when the plaintiffs' right of action accrued so as to commence the running of the statute of limitations, [thus] the matter [is] clearly a question for the jury." <u>Childers Oil Co., Inc. v. Exxon Corp.</u>, 960 F.2d 1265, 1273 (4th Cir. 1992) (citation omitted). "In other words, if resolution of a statute of limitations defense presents a genuine question of material fact, a jury should resolve it. If not, a statute of limitations may be applied as a matter of law." <u>Id.</u>

The following five-step analysis was laid out by the West Virginia Supreme Court for determining whether a cause of action is time-barred or has been tolled based on the discovery rule:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if material questions of fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of <u>Gaither v. City Hosp., Inc.</u> [ ].[1] Fourth, if the plaintiff is not entitled to the benefit

---

[1] "In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury."

of the discovery rule, then determine whether the
defendant fraudulently concealed facts that prevented the
plaintiff from discovering or pursuing the cause of
action. Whenever a plaintiff is able to show that the
defendant fraudulently concealed facts which prevented
the plaintiff from discovering or pursuing the potential
cause of action, the statute of limitation is tolled.
And fifth, the court or the jury should determine if the
statute of limitation period was arrested by some other
tolling doctrine. *Only the first step is purely a
question of law; the resolution of steps two through five
will generally involve questions of material fact that
will need to be resolved by the trier of fact.*

Dunn v. Rockwell, 689 S.E.2d 255, 265 (W. Va. 2009) (emphasis

added).

Pursuant to Dunn, this Court finds that the discovery defense

forwarded by the plaintiffs in response to the defendant's statute

of limitations argument is a question for the jury. At this point,

it is unclear when Mr. Moore was aware that the replaced pipeline

was not within the described metes and bounds of the right-of-way

agreement. Both sides have provided evidence that Mr. Moore could

have known as early as 1995-1997 or as late as 2012. Accordingly,

this Court may not grant summary judgment, because material

questions of fact still exist and thus, the discovery rule is an

issue left for the trier of fact.

    2. Continuing Trespass

The plaintiffs also argue that the statute of limitations does

not bar their recovery because the misplacement of the pipeline

constitutes a continuing trespass either because (1) the defendant

placed the pipeline off of the agreed route, or (2) because the

defendant continues to flow its gas through the misplaced pipeline. The defendant contends that it did not trespass because the pipeline was correctly placed. However, the defendant also argues that the plaintiffs misconstrue the law on continuing trespass because the trespass that began the running of the statute of limitations was the actual placement of the pipeline which was a discrete and complete act and no repeated wrong or repeated injury occurred.

The following passage from <u>Whiteman v. Chesapeake Appalachia, L.L.C.</u>, 729 F.3d 381, 386 (4th Cir. 2013), sets out the applicable trespass law:

> West Virginia, common law trespass is "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property." <u>Hark v. Mountain Fork Lumber Co.</u>, 127 W. Va. 586, 591-92, 34 S.E.2d 348, 352 (1945). A continuing trespass occurs, for example, when one person leaves on the land of another, with a duty to remove it, "a structure, chattel, or other thing." Restatement (Second) of Torts § 160 (1965). Regarding remedies for actions in trespass, the general rule in West Virginia is that "a mere trespass to real estate will not be enjoined when the injury . . . is susceptible of complete pecuniary compensation and for which the injured person has an adequate legal remedy." <u>Wiles v. Wiles</u>, 134 W. Va. 81, 91, 58 S.E.2d 601, 606 (1950). Nevertheless, in West Virginia, "[a] court of equity has jurisdiction to enjoin a continuing trespass." <u>Tate v. United Fuel Gas Co.</u>, 137 W. Va. 272, 278-79, 71 S.E.2d 65, 69-70 (1952). Notwithstanding the above, a claim for trespass under West Virginia common law can only lie if one's entry upon the land of another -- or one's leaving a "thing" upon the land of another -- is "without lawful authority." <u>Hark</u>, 34 S.E.2d at 352.

Several courts have held, and West Virginia precedent supports, that there is a distinction between a permanent trespass and a continuing trespass. In Mims v. United States, 349 F.Supp. 839 (W.D. Va. 1972), the United States District Court for the Western District of Virginia held that "where the trespass is permanent in nature, the entire cause of action occurs when the original trespass is committed." Id. at 844 (citing Rankin v. DeBare, 205 Cal. 639, 271 P. 1050 (1928); Kafka v. Bozio, 191 Cal. 746, 218 P. 753, 29 A.L.R. 833 (1923); Williams v. Southern Pacific R. R. Co., 150 Cal. 624, 89 P. 599 (1907); Bacon v. Glenn, 120 Cal. App. 112, 7 P.2d 718 (1932)). In comparison, however, the West Virginia Supreme Court found that "the concept of a continuing tort requires a showing of repetitious, wrongful conduct. Moreover, . . . a wrongful act with consequential continuing damages is not a continuing tort." Ricottilli v. Summersville Memorial Hospital, 425 S.E.2d 629, 632 (W. Va. 1992) (finding that the continuing tort defense may not be used where the wrongful act is fixed but damages may continue to accrue after the wrongful act).

The following four cases show West Virginia's view on the application of the continuing tort defense in negligence law. The final case that will be reviewed by this Court, Betterview, is further persuasive authority that mirrors more closely the facts of this case.

### a. Miller v. Lambert

"[T]he continuing tort theory is inapposite where the plaintiff claims fixed acts by the defendant which do not involve a continuing wrong . . . ." Miller v. Lambert, 467 S.E.2d 165, 171 (1995). For instance, in Miller, the plaintiffs had made claims for trespass against their neighbors regarding the placement of fill material on the plaintiffs' property in 1983, the construction of a fence on the plaintiffs' property in 1984, and the placing of additional fill material on the property in 1986 in an effort by the defendants to restore their riverbank property. Id. at 170. However, the plaintiffs did not bring any action against the defendants (their neighbors) until 1990. Id. The court reasoned that each action by the defendants was distinct and did not constitute a continuing trespass, and thus the first trespass occurred in 1983 and the last trespass occurred in 1986. Id. at 171. Further, the court found that even if the defendants' actions amounted to a continuing trespass, the last trespass claim occurred in 1986 because "[e]ven where a tort involves a continuing or repeated injury, the cause of action accrues at the date of the last injury." Id. at 171.

### b. Roberts v. West Virginia American Water Co.

Additionally, in Roberts, the Court found that where the plaintiff was claiming damages for the defendant's faulty installation of a waterline and not for any continuing malfunction

24

of the installation or for further misconduct on the part of the defendant, the plaintiff could not claim the continuing tort defense. <u>Roberts v. West Virginia American Water Co.</u>, 655 S.E.2d 119, 124 (2007). The plaintiff had claimed that the erosion of his road over time, about a four-year period, was the direct result of the damage done by the defendant in installing his waterline. <u>Id.</u> at 122. However, the plaintiff had testified that within three weeks of the completion of the project, he had noticed the slippage. <u>Id.</u> The West Virginia Supreme Court found that despite the plaintiff's claims, he had filed after the statute of limitations expired because "a continuing tort with respect to negligence actions is continuing tortuous conduct, that is, a continuing violation of a duty owed the person alleging injury, rather than continuing damages emanating from a discrete tortuous act." <u>Id.</u> at 124. Thus, the plaintiff had failed to show "continuing misconduct which serve[d] to toll the statute of limitations. <u>Id.</u>

      c. <u>Handley v. Town of Shinnston</u>

Finally, where the "damage did not occur all at once but increased as time progressed; each injury being a new wrong . . . [and] a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from the date of the last injury, or when the tortious overt acts cease." <u>Handley v. Town of Shinnston</u>, 289 S.E.2d 201, 202 (W. Va. 1982). For

instance, in <u>Handley</u>, the plaintiffs had noticed in 1972 that the city's waterline under their property was leaking and notified the city. <u>Id.</u> Thereafter, the line continued to leak and eventually caused a crack to appear on the surface of the plaintiffs' yard in 1976. <u>Id.</u> The waterline leaked until 1978 when it was eventually removed, however, even after it was removed the crack in the plaintiffs' yard continued to expand and created a large crater. <u>Id.</u> The plaintiffs thus brought an action in 1979 against the town and asserted a continuing trespass defense to the two-year statute of limitations. <u>Id.</u> The West Virginia Supreme Court found that a continuing trespass did occur spanning from at least 1972 to 1978 because there was a continued or repeated injury and the damage increased as the injury was committed. <u>Id.</u> Accordingly, the court found that the plaintiffs' action could not be dismissed based on the applicable statute of limitations. <u>Id.</u>

   d.  <u>EQT Gathering Equity, LLC v. Fountain Place, LLC</u>

   In <u>Fountain Place</u>, the United States District Court for the Southern District of West Virginia applied West Virginia precedent regarding the continuing tort defense to the plaintiff's claim that the defendant's act of placing fill dirt over a pipeline in 2001 constituted a continuing trespass on the plaintiff's easement to the defendant's property. <u>EQT Gathering Equity, LLC v. Fountain Place, LLC</u>, CIV.A. 2:09-0069, 2011 WL 5419452, *1 (S.D. W. Va. Nov. 9, 2011). The plaintiff specifically argued that the defendant's

failure to remove the fill dirt from the pipeline and easement was a continuing breach of duty to the plaintiff causing repeated and continuing interference with the plaintiff's pipeline until the pipeline was relocated in 2008. Id. The court found that the plaintiff could not assert the continuing trespass doctrine because the breach of duty alleged occurred at the time the fill was placed and "no further duty or injury arose following that date." Id. at *3. The court thus reasoned that the injury was complete when the filling ceased and the plaintiff was then charged with pursuing its rights within the applicable two-year statute of limitations. Id.

      e. Betterview Investments, LLC v. Pub. Serv. Co. of Colorado

     A pipeline located outside of the proscribed area of an "historical easement" effects a continuing trespass. Betterview Investments, LLC v. Pub. Serv. Co. of Colorado, 198 P.3d 1258, 1262-63 (Colo. Ct. App. 2008). However, that rule, promulgated by the Colorado Court of Appeals, is subject to the following exception: "'[W]here the property invasion will and should continue indefinitely because defendants, with lawful authority, constructed a socially beneficial structure intended to be permanent,' the property owner cannot sustain an action for a continuous trespass." Id. at 1263 (citation omitted).

      f. Application

     In this case, it seems that the defendant would fall within the exception rather than the overarching rule of Betterview if the

27

defendant can show that it had lawful authority to construct the relocated pipeline "approximately" close to the original pipeline. The other two elements are met pursuant to <u>Betterview</u>: the defendant has constructed a socially beneficial structure, a pipeline that delivers an important utility; and the structure was intended to be permanent, there was no express agreement by the parties as to an end date. <u>See</u> <u>id.</u> (finding that where the parties had an express agreement as to an end date, the structure was not permanent). Thus, according to <u>Betterview</u>, there is still a material factual issue as to the doctrine of continuing trespass that must be left to a finder of fact.

However, this Court construes West Virginia's application of the continuing trespass doctrine as more narrow than that of the Colorado court. <u>See</u> <u>EQT Gathering Equity, LLC v. Fountain Place, LLC</u>, CIV.A. 2:09-0069, 2011 WL 5419452 at *2 (S.D. W. Va. Nov. 9, 2011) (noting that the doctrine "is often misconstrued by injured parties as applying more broadly than intended."). As such, as in this case where there was an alleged wrongful act with continuing damages, the plaintiffs may not rely on the doctrine of continuing trespass to contend the defendant's statute of limitations argument. Further, in considering <u>Fountain Place</u> and <u>Handley</u>, the plaintiffs' continuing trespass claim should fail because the plaintiffs are requesting removal of the impediment and are arguing that a continuing trespass is occurring only because the impediment

(the pipeline) remains in allegedly the wrong location. Id. (The plaintiff in Fountain Place was complaining about fill dirt that the defendant would not remove). Thus, in this action, because the replacement pipeline was finalized at the latest in 1997, the statute of limitations would have begun to accrue at that time notwithstanding other exceptions.

This Court, however, has found above that the plaintiffs' discovery rule argument is still valid as it is a question for the trier of fact. As such, this Court's finding that the continuing trespass doctrine is inapplicable in this case does not warrant a granting of the defendant's motion for summary judgment.

C.  Adverse Possession

The defendant contends that if it is found to have wrongfully placed the pipeline, it may claim the property through a prescriptive easement. The defendant asserts that the third element required for a prescriptive easement is met in this case because Mr. Moore was aware of the pipeline as early as 1995. The plaintiffs, on the other hand, contend that Mr. Moore was not aware of the incorrect location of the pipeline because the pipeline was buried when it was relocated. Further, the plaintiffs assert that the defendant's own employees were unaware of the actual location of the pipeline until they reviewed the construction file, as part of this litigation, themselves. Thus, Mr. Moore cannot be held to have known something that the employees themselves did not know.

Pursuant to West Virginia law, in West Virginia, a claim of prescriptive easement requires proof through clear and convincing evidence of the following elements:

> (1) the adverse use of another's land;
> (2) that the adverse use was continuous and uninterrupted for at least ten years;
> (3) that the adverse use was actually known to the owner of the land, or so open, notorious and visible that a reasonable owner of the land would have noticed the use; and
> (4) the reasonably identified starting point, ending point, line, and width of the land that was adversely used, and the manner or purpose for which the land was adversely used.

O'Dell v. Stegall, 703 S.E.2d 561, 579 (2010).

This Court finds that the third element is still a genuine issue of material fact for a jury to consider. As stated in previous sections of this opinion, the parties are clearly in contention as to whether or not Mr. Moore was aware that the pipeline was relocated in the incorrect place. Further, as the plaintiffs note, the pipeline was buried and thus, Mr. Moore was unlikely to be able to determine the actual location of the pipeline after the initial construction ceased. Lastly, the deposition testimony of the defendant's employee, Mr. Allen, is reason enough to deny summary judgment at this stage. Mr. Allen changed his testimony after reviewing construction files and testified that he now believes the pipeline was not located along the right-of-way. See ECF No. 38-2, 38-3. Thus, there are still genuine issues of material fact as to (1) whether Mr. Moore

actually knew that the pipeline was incorrectly relocated or (2) whether the incorrect location of the pipeline was "notorious and visible" to Mr. Moore.

D.   Ejectment as a Remedy

    1.   Ejectment: Based on the Merits

The defendant contends that ejectment is not a proper remedy based on the merits of this action. The defendant asserts that the wrong allegedly committed is not equal to the remedy sought and that Mr. Moore is only pursuing this action out of vengeance for other wrongs committed against by another company, EQT (not a party to this action). The plaintiffs responded that ejectment is a proper remedy pursuant to West Virginia law as they have argued that the defendant has trespassed and continues to trespass on their land.

"Ejectment is an action for the protection of one with good legal title to the land who is entitled to immediate possession." Marthens v. B & O R. Co., 289 S.E.2d 706, 712 (W. Va. 1982). Ejectment has been held to be a proper equitable remedy where it is possible that the plaintiff could recover a money judgment, but that he would not be afforded complete relief by such a recovery. Tate v. United Fuel Gas Co., 71 S.E.2d 65, 70 (1952). Further, "[h]istorically, West Virginia has always accorded the right to a jury trial in an action for ejectment." Marthens, 289 S.E.2d at 712 (citing W. Va. Code § 55-4-17 (1929); Davis Colliery Co. v.

_Westfall_, 90 S.E. 328 (W. Va. 1916); _Garrett v. South Penn Oil Co._, 66 S.E. 741 (W. Va. 1909)).

In this action, it appears that ejectment is a possible equitable remedy pursuant to West Virginia law as the plaintiffs believe that a monetary remedy may not make them whole. Additionally, for the reasons provided in this order's discussion regarding condemnation and primary jurisdiction, this Court finds that the issue of ejectment may be a proper remedy. However, if the plaintiffs seek to eject the pipeline permanently and thus cause an abandonment of the pipeline by the defendant, this Court would then be required to transfer this action to the FERC.

2.  Ejectment: Condemnation

The parties disagree as to whether or not the defendant has the right to condemn the plaintiffs' property if this Court finds that the defendant does not a prescriptive easement and/or that the plaintiffs are entitled to relief through ejectment. The defendant argues that if this Court were to find that the defendant does not have a prescriptive easement (which the Court only needs to find if the pipeline was incorrectly placed), the defendant meets the three requirements for condemnation under the Natural Gas Act: (1) it is a holder of a certificate of public convenience and necessity (the defendant provided proof through its exhibits); (2) the defendant needs to acquire an easement, right-of-way, land, or other property necessary to the operation of its pipeline system; and (3) the

defendant has been unable to acquire those interest from the owner. On the other hand, the plaintiffs argue that the defendant does not qualify for condemnation because the defendant already has a right-of-way on the land and will only lose that right-of-way because of its trespass on the plaintiffs' property. Thus, the plaintiffs further contend that the defendant cannot seek condemnation pursuant to the unclean hands doctrine.

This issue, however, will not arise until this Court would grant relief by ejectment as only then the defendant would no longer have an agreement with the plaintiffs and thus would qualify for condemnation under the Natural Gas Act.

Title 15, United States Code, Section 717f(h), "Right of eminent domain for construction of pipelines, etc." states as follows:

> When any holder of a certificate of public convenience and necessity **cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way**, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, That the United States district

33

> courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

(emphasis added).

"[E]minent domain statutes are strictly construed to exclude those rights not expressly granted." Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty., 550 F.3d 770, 774-75 (9th Cir. 2008); see Humphries v. Williams Natural Gas Co., 48 F.Supp. 2d 1276, 1281 (D. Kan. 1999); see also Northern Border Pipeline Co. v. 86.72 Acres of Land, 144 F.3d 469, 471 (7th Cir. 1998) (Northern Border); Northwest Pipeline Corp. v. The 20 x 1,430' Pipeline Right of Way, 197 F.Supp. 2d 1241, 1243-1244 (E.D. Wash. 2002); Northern Border Pipeline Co. v. 127.79 Acres of Land, More or Less in Williams County, N.D., 520 F.Supp. 170, 173 (D.C.N.D. 1981). Thus, if strictly construing the language "cannot acquire by contract, or is unable to agree with the owner of property," the contract at issue here would disqualify the defendant from being granted the right to condemn the plaintiffs' property for the use of the pipeline.

Further, where the gas company committed a wrong after meeting the three requirements of § 717f(h) but not gaining approval for condemnation from the federal courts, the United States District Court for the District of Kansas held that because the gas company derived its authority solely from the Natural Gas Act, "it [was] not entitled to the benefits of § 717f(h) [because] it [did] not

adhere to the procedure it sets forth.  Because [the gas company] chose not to follow that procedure it cannot escape the consequences of its own acts."  <u>Humphries v. Williams Natural Gas Co.</u>, 48 F.Supp. 2d 1276, 1282 (D. Kan. 1999) (discussing the allegations of trespass against the gas company).  The Court held as such because it believed that Congress did not intend "the condemnation authority granted by § 717f(h) to cloak holders of certificates of public convenience and necessity with impunity to commit trespasses and other civil wrongs."  <u>Id.</u>  Based on this limited authority, the defendant would be unable to use § 717f(h) at this time, but would rather only be able to raise condemnation if this Court found that the defendant trespassed, and the only relief available was to eject the defendant from the plaintiffs' property.  This Court cannot make such a finding at this time and thus this argument is premature.

E.    <u>FERC and Primary Jurisdiction</u>

The defendant argues that this Court lacks jurisdiction to order an ejectment or abandonment of the pipeline in question because the FERC has primary jurisdiction.  The defendant asserts that the FERC has jurisdiction over the dedication and abandonment of interstate natural gas pipelines and thus, courts do not have authority over plaintiffs' claims in such actions for ejectment, trespass, and removal.  Additionally, the defendant contends that the plaintiffs' distinction between "relocation" and "ejectment" is

35

not valid under the Natural Gas Act because either relief would necessarily discontinue use of a portion of the H-557 pipeline. Further, the defendant contends that it cannot waive an argument as to FERC's jurisdiction because it is statutory.

The plaintiffs argue that the FERC lacks jurisdiction because plaintiffs' ejectment action, if successful, does not require the defendant to abandon the pipeline but only requires relocation. Further, the plaintiffs assert that even assuming the FERC has jurisdiction, the FERC shares its jurisdiction with this Court pursuant to the doctrine of primary jurisdiction. As such, this Court may retain this action or stay this action while the FERC decides the issues under its jurisdiction. Further, the plaintiffs argue that the defendant has waived the FERC defense. The plaintiffs assert that this is shown by the defendant: (1) removing the action to this Court without attempting to have the state court remand to the FERC; (2) not raising the affirmative defense of FERC jurisdiction once the action was removed; and (3) filing a counterclaim and moving for summary judgment in this Court, after removal and the filing of an answer.

"[P]rimary jurisdiction," . . . counsels that when a determinative issue, although properly before an Article III court, is "within the special competence of an administrative agency . . . [the court is enabled to make] a referral to the agency, staying further proceedings so as to give the parties reasonable

opportunity to seek an administrative ruling." <u>In re Bulldog Trucking, Inc.</u>, 66 F.3d 1390, 1399-1400 (4th Cir. 1995) (quoting from <u>Reiter v. Cooper</u>, 507 U.S. 258, 268-69 (1993)).

When primary jurisdiction is implicated, the district court is not divested of jurisdiction and has the option of staying the civil action or dismissing it without prejudice "if the parties would not be 'unfairly disadvantaged' by such dismissal." <u>Reiter</u>, 507 U.S. at 268-69. There is no precedent in the Fourth Circuit which expresses reservations as to the scope of application of this doctrine, and the argument that it should be used sparingly has been rejected. <u>See</u> <u>Potomac Elec. Power Co. v. Panda Brandywine, L.P.</u>, 99 F.Supp. 2d 681, 682-83 (D. Md. 2000) (finding that the Fourth Circuit did not limit the scope of the application of the primary jurisdiction doctrine in <u>In re Bulldog Trucking, Inc.</u> and thus that there was no precedent to find that it should be used sparingly by district courts).

A district court should consider referring a case under the doctrine of primary jurisdiction in cases "involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency." <u>New York State Elec. & Gas Corp. v. New York Indep. Sys. Operator, Inc.</u>, 168 F.Supp. 2d 23, 26 (N.D.N.Y. 2001) (citation omitted). There is no fixed rule for determining whether or not a case should be referred under this doctrine. However, some courts use a four factor analysis to help in making

such a determination. <u>Id.</u> (citing <u>MCI Telecomms. Corp. v. John Mezzalingua Assocs.</u>, 921 F.Supp. 936, 941 (N.D.N.Y. 1996) (citing <u>Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.</u>, 46 F.3d 220, 223 (2d Cir. 1995)). The four factors are: "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise, (2) whether the question at issue is particularly within the agency's discretion, (3) whether there exists a substantial danger of inconsistent rulings, and (4) whether a prior application to the agency has been made." <u>Nat'l Communications Ass'n</u>, 46 F.3d at 223. "The court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." <u>Id.</u>

Primary jurisdiction does not apply to legal questions "within the conventional competence of the courts." <u>New York State Elec. & Gas Corp. v. New York Indep. Sys. Operator, Inc.</u>, 168 F.Supp. 2d 23, 26 (N.D.N.Y. 2001) (citation omitted). However, a different analysis is used if mutual jurisdiction exists and some questions are outside the "conventional competence" of the court:

> The threshold question in a primary jurisdiction case is "whether both the court and an agency have jurisdiction over the same issue." Where mutual jurisdiction exists, referral to an agency is appropriate "'even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined.'" . . . "By referring to administrative agencies matters that involve 'technical

> or policy considerations which are beyond the court's
> ordinary competence and within the agency's particular
> field of expertise,' preliminary referral secures
> '[u]niformity and consistency in the regulation of
> business.'"

Id.

This Court finds that at this time, it should not divest jurisdiction to the FERC. Other courts have found and this Court finds now, that an abandonment under the Natural Gas Act only occurs "whenever a natural gas company permanently reduces a significant portion of a particular service." Columbia Gas Transmission Corporation v. F.E.R.C., 448 F.3d 382, 386 (D.C. Cir. 2006). In this action, the plaintiffs assert in their complaint that they are seeking damages and ejectment of the pipeline. However, through briefing, the plaintiffs contend that they are not seeking permanent ejection but rather only relocation of the pipeline to its proper place. Given this concession by the plaintiffs, the Court cannot find that the relief sought by the plaintiffs would lead to a permanent reduction of a significant portion of the defendant's service. As such, as long as the relocation of the pipeline, if the plaintiffs are found to be entitled to relief, would return to "normal" at a later time and only be a "temporary service interruption", this Court is not required to refer this action to the FERC. Id.

As such, this Court finds that it is not divested of jurisdiction and this action may proceed as the issue is not one

particularly within FERC's discretion. <u>Nat'l Communications Ass'n</u>, 46 F.3d at 223. Further, the trespass and breach of contract claims that remain are within the "conventional competence" of the Court as this Court regularly deals with such issues. <u>New York State Elec. & Gas Corp.</u>, 168 F. Supp. 2d at 26. Thus, the defendant's motion for summary judgment must be denied.

## V. <u>Conclusion</u>

Based on the analysis above, the defendant's motion for summary judgment is DENIED AS MOOT. Further, the defendant's amended motion for summary judgment is DENIED. Finally, the plaintiffs' motion for summary judgment is DENIED.

Additionally, this Court vacated the scheduling order in this action. As such, this Court feels it would be beneficial to hold a status and scheduling conference. Therefore, it is ORDERED that the parties appear by counsel on **October 15, 2014 at 12:00 p.m**. in the chambers of Judge Frederick P. Stamp, Jr., Federal Building, 1125 Chapline Street, Wheeling, West Virginia 26003.

The undersigned judge is currently scheduled to be in trial on the date of the status and scheduling conference. In the event that the trial does not proceed, the status and scheduling conference will be rescheduled to 1:15 p.m. on this same date.

The Court will permit those out-of-town attorneys having their offices further than forty (40) miles from the point of holding court to participate in the conference by telephone. However, any

such attorney shall advise the Court as soon as possible prior to the conference of his or her intention to participate by telephone and shall (1) inform all counsel of his or her appearance by telephone; (2) confer with other out-of-town attorneys to determine if they wish to appear by telephone; (3) advise the Court of the name of the attorney who will initiate the conference call and all such attorneys appearing by telephone; and (4) initiate a timely conference telephone call with such attorneys to the Court at 304/233-1120 at the time of the scheduled hearing. If the attorneys cannot reach agreement as to the initiator of the call, the Court will make that determination.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     September 23, 2014

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE